**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-3172-WJM-STV

LAURA CURTIN and
CHARLES CURTIN,

      Plaintiffs,

v.

ETHICON, INC., and
JOHNSON & JOHNSON,

      Defendants.

---

## ORDER GRANTING ETHICON'S MOTION FOR  PARTIAL SUMMARY JUDGMENT

---

      This product liability action was transferred to this Court from a multi-district litigation ("MDL") proceeding in the United States District Court for the Southern District of West Virginia.  *In re Ethicon, Inc. Pelvic Repair Systems Products Liability Litigation*, No. 2:12-md-2327 (S.D. W. Va.).  The MDL involves claims of harm resulting from implantation of various polypropylene-based mesh products.

      Before the Court is Defendants Ethicon, Inc. and Johnson & Johnson's (jointly, "Ethicon") Motion for Partial Summary Judgment ("Motion for Partial Summary Judgment").  (ECF No. 26.)  Plaintiffs Laura Curtin and Charles Curtin (jointly, "Plaintiffs") responded in opposition.  (ECF No. 30.)  Ethicon filed no reply.  With the Court's permission (ECF No. 70), Ethicon filed a Supplement to Motion for Partial Summary Judgment (the "Supplement") (ECF No. 71), to which Plaintiffs responded in opposition (ECF No. 73).  For the following reasons, the Motion for Partial Summary

Judgment is granted.

## I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND[1]

Plaintiffs resided in Colorado from 1994 until 2013, when they relocated to North Carolina for approximately three years.  (ECF No. 27 at 2 ¶ 3; ECF No. 30 at 3 ¶ 3.)  Plaintiffs were then transferred to Arizona for six months by Mr. Curtin's employer.  (*Id.*)

---

[1] The following factual summary is based on the parties' briefs on the Motion for Partial Summary Judgment and the Supplement and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

They have resided in Colorado since returning in 2016.  (*Id.*)  Ms. Curtin has received mesh-related medical care and treatment in Colorado, North Carolina, and Arizona. (ECF No. 27 at 2 ¶ 4; ECF No. 30 at 3 ¶ 4.)

On May 2, 2006, Ms. Curtin underwent implantation of tension-free vaginal tape ("TVT") for treatment of stress urinary incontinence ("SUI") performed by Dr. James Simon in Colorado Springs, Colorado.  (ECF No. 27 at 2 ¶ 1; ECF No. 30 at 2 ¶ 1.)  Ms. Curtin underwent surgery to remove the TVT on December 20, 2013 in Aurora, Colorado.  (ECF No. 27 at 2 ¶ 2;  ECF No. 30 at 2 ¶ 2.)  Ms. Curtin denies that the surgery was successful, rectified her mesh-related injuries, or removed all of Ethicon's mesh product and/or eroded particles from her body.  (ECF No. 30 at 2 ¶ 2.)

Ms. Curtin alleges she experienced the following injuries as a result of her TVT: mesh exposure, vaginal pain, pain with intercourse, bleeding, infection, vaginal scarring, urinary problems, and recurrence of her SUI.  (ECF No. 71 at 2 ¶ 2; ECF No. 73 at 2 ¶ 2.)  Ms. Curtin states that she has also experienced bowel obstruction, chronic constipation, chronic diarrhea, hernias, chronic bladder infections, and digestive problems with bowel control and constipation.  (ECF No. 73 at 2 ¶ 2 (citing ECF No. 71-1 at 10–13).)

The parties dispute Dr. Simon's awareness of the risks of TVT before he implanted the device in Ms. Curtin.  (ECF No. 71 at 3 ¶ 3; ECF No. 2 ¶ 3.)  The parties dispute whether Dr. Simon knew at the time of Ms. Curtin's surgery that the risks could be temporary or chronic, and mild, moderate, or severe.  (ECF No. 71 at 3 ¶ 4; ECF No. 73 at 3 ¶ 4.)  The parties dispute Dr. Simon's review of the TVT's Instructions for Use ("IFU") before implanting the device in Ms. Curtin.  (ECF No. 71 at 3 ¶ 5; ECF No. 73 at

3–4 ¶ 5.)  The parties dispute the bases of Dr. Simon's informed-consent process. (ECF No. 71 at 4 ¶ 6; ECF No. 73 at 4–6 ¶ 6.)  The parties dispute Dr. Simon's reliance on the IFU.  (ECF No. 71 at 4 ¶ 7; ECF No. 73 at 6–7 ¶ 7.)  The parties dispute whether Dr. Simon's decision to prescribe the TVT for Ms. Curtin would have changed had he been given different or stronger warnings in the IFU.  (ECF No. 71 at 4 ¶ 8; ECF No. 73 at 7 ¶ 8.)  The parties dispute whether Dr. Simon continues to believe the TVT was a safe and effective treatment for Ms. Curtin, even with the knowledge that he has today. (ECF No. 71 at 4 ¶ 9; ECF No. 73 at 7–8 ¶ 9.)

Plaintiffs directly filed suit in the MDL on July 9, 2014.  (ECF No. 27 at 2–3 ¶ 5; ECF No. 30 at 3 ¶ 5.)  They amended their complaint on February 3, 2015.  (*Id.*)  In the First Amended Short Form Complaint, Plaintiffs assert the following claims: Negligence (Count I); Strict Liability – Manufacturing Defect (Count II); Strict Liability – Failure to Warn (Count III); Strict Liability – Defective Product (Count IV); Strict Liability – Design Defect (Count V); Common Law Fraud (Count VI); Fraudulent Concealment (Count VII); Constructive Fraud (Count VIII); Negligent Misrepresentation (Count IX); Negligent Infliction of Emotional Distress (Count X); Breach of Express Warranty (Count XI); Breach of Implied Warranty (Count XII); Violation of Consumer Protection Laws (Count XIII); Gross Negligence (Count XIV); Unjust Enrichment (Count XV); Loss of Consortium (Count XVI); Punitive Damages (Count XVII); and Discovery Rule and Tolling (Count XVIII).  (*Id.*)

On August 9, 2019, Ethicon filed the Motion for Partial Summary Judgment in the MDL.  (ECF No. 26.)  On August 28, 2019, Plaintiffs filed the response.  (ECF No. 30.) The parties filed supplemental briefing.  (ECF Nos. 71, 73.)  This case was transferred

from the MDL to the District of Colorado on October  9, 2020 (ECF No. 32), and was

assigned to the undersigned on November 10, 2020.  (ECF No. 56.)

### III. CHOICE OF LAW

The parties agree that for cases filed directly in the MDL, "the choice of law that

applies is the place where the plaintiff was implanted with the product."  *Belanger v.*

*Ethicon, Inc.*, 2014 WL 346717, at *7 (S.D. W. Va. Jan. 30, 2014); (ECF No. 27 at 3–4;

ECF No. 30 at 4).  Colorado applies the "most significant relationship" test found in

Sections 6 and 145 of the Restatement (Second) of Conflicts of Law in tort actions.  *See*

*Elvig v. Nintendo of Am., Inc.*, 696 F. Supp. 2d 1207, 1210 (D. Colo. 2010) (citations

omitted).  As the place of Ms. Curtin's residence and the state where her injuries

occurred, Colorado has the most significant relationship to this case.  *See, e.g.*,

*Caldwell v. Geico Gen. Ins. Co.*, 2010 WL 865773, at *9 (D. Colo. Mar. 8, 2010); *see*

*also Bellew v. Ethicon, Inc.*, 2014 WL 6886129, at *2 (S.D. W. Va. Nov. 24, 2014).

### IV. ANALYSIS

As a threshold matter, Plaintiffs have withdrawn the following claims: Strict

Liability – Manufacturing Defect (Count II); Common Law Fraud (Count VI); Fraudulent

Concealment (Count VII); Constructive Fraud (Count VIII); Negligent Misrepresentation

(Count IX); Breach of Express Warranty (Count XI); Breach of Implied Warranty (Count

XII); and Unjust Enrichment (Count XV).  (ECF No. 30 at 16.)  The Court will not

address Ethicon's arguments regarding these withdrawn claims.  Accordingly, Ethicon's

Motion for Partial Summary Judgment is granted as to these claims.

**A.     Claims related to Manufacturing Defect - (Negligence (to the extent based on negligent manufacturing defect (Count I), Strict Liability – Manufacturing Defect (Count II), Negligent Infliction of Emotional Distress (to the extent based on negligent manufacturing defect (Count X), and Gross Negligence**

**(to the extent based on negligent manufacturing defect (Count XIV))**

Ethicon argues that Plaintiffs have "no evidence that the product implanted in Ms. Curtin deviated from Ethicon's manufacturing specifications." (ECF No. 27 at 4.) In addition, Ethicon argues that "no expert for Plaintiffs has opined that a deviation from the manufacturer specifications caused an injury to Ms. Curtin." (*Id.*) As such, Ethicon argues that "all claims asserting manufacturing defect claim (Counts I, II, X, and XIV) should be dismissed." (*Id.*) In the Supplement, Ethicon further clarifies that its request for dismissal of these claims is limited to the extent they are based on an alleged negligent manufacturing defect. (ECF No. 71 at 1–2.)

In response, Plaintiffs acknowledge that they have withdrawn their claim for Strict Liability – Manufacturing Defect (Count II). (ECF No. 30 at 5.) Nevertheless, Plaintiffs point out that on this issue, Ethicon's motion is limited to the manufacturing defect aspect of the remaining negligence-based claims. To that end, Plaintiffs argue that genuine issues of material fact remain as to each of their negligence-based claims, including those for design defect and failure to warn. In their response to the Supplement, Plaintiffs do not contest Ethicon's characterization that the specified negligence-based claims should be dismissed to the extent they are based on a theory of negligent manufacturing defect. (*See generally* ECF No. 73.)

Accordingly, the Court will grant summary judgment in favor of Ethicon on the following claims, to the extent they are based on a theory of negligent manufacturing defect: Negligence (Count I), Negligent Infliction of Emotional Distress (Count X), and Gross Negligence (Count XIV). Otherwise, these claims remain pending, as Ethicon moved for summary judgment only to the extent these claims are based on negligent manufacturing defect. As noted above, Plaintiffs have withdrawn their claim for Strict

Liability – Manufacturing Defect (Count II) (ECF No. 30 at 16), and thus the Court will grant summary judgment in favor of Ethicon on this claim.

**B.      Strict Liability – Defective Product (Count IV)**

Ethicon argues that Colorado law does not provide a cause of action for strict liability based on "defective product."  (ECF No. 27 at 5.)  Instead, in Colorado, strict liability claims may be based on design defects, manufacturing defects, or failure to warn.  *See Camacho v. Honda Motor Co.*, 741 P.2d 1240, 1247 (Colo. 1987) ("A product may be unreasonably dangerous due to a manufacturing defect, a design defect or a failure to warn.").

Plaintiffs do not address this argument in their response brief, but curiously, this claim is not included among those claims Plaintiffs have voluntarily withdrawn.  (*See generally* ECF No. 30.)

In the Supplement, Ethicon states that "Plaintiffs conceded that Ethicon was entitled to summary judgment on all of these claims [included in the list is Strict Liability – Defective Product (Count IV)] except the claim for violation of consumer protection laws (Count XIII)."  (ECF No. 71 at 1–2.)  Neither in their response to the Supplement, or indeed in any other filing with this Court, do Plaintiffs contest Ethicon's characterization of their position on this claim.  This buttresses the Court's determination that Plaintiffs do not intend to proceed with this claim and that its dismissal is warranted.  (*See* ECF No. 73.)

Accordingly, the Court will grant summary judgment in favor of Ethicon as to Plaintiffs' Strict Liability – Defective Product claim.  *See Adler*, 144 F.3d at 672 (10th Cir. 1998) (a court is not obligated "make a party's case for it").

**C.**    **Strict Liability – Failure to Warn (Count III) and Negligence (to the extent based on failure to warn (Count I))**

Under Colorado law, "a failure to warn adequately can render a product, which is otherwise free of defect, defective for purposes of strict liability recovery." *Carver v. Am. Med. Sys. Inc.*, 2020 WL 8258217, at *2 (D. Colo. May 18, 2020) (quoting *O'Connell v. Biomet, Inc.*, 250 P.3d 1278, 1280 (Colo. App. 2010)).  To succeed on a failure to warn claim, the plaintiff bears the burden to prove that the manufacturer of the product gave (1) an inadequate warning of the danger (2) that caused the injury at issue.  *Id.*  In the medical context, the manufacturer's duty to warn runs to the prescribing physician or nurse practitioner, not the patient, to warn "of any potential dangers that may result from the drug's [or device's] use."  *Id.*  This is because "the physician is trained to assess the risks and benefits of the drug [or device] as applied clinically to a particular patient."  *Id.*  This is known as the learned intermediary doctrine.

Even when instructions or warnings are inadequate, the doctrine still can come into play on the causation prong of the claim if the evidence shows that proper warnings would not have changed the course of treatment.  *Id.*  As the Fifth Circuit has explained, "if . . . the physician was aware of the possible risks involved in the use of the product but decided to use it anyway, the adequacy of the warning is not a producing cause of the injury and the plaintiff's recovery must be denied."  *Id.* (internal quotation marks omitted) (quoting *Ackermann v. Wyeth Pharm.*, 526 F.3d 203, 208 (5th Cir. 2008)); *see also Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 853 (10th Cir. 2003) (following the Fifth Circuit's approach to the learned intermediary doctrine); *Lynch v. Olympus Am., Inc.*, 2019 WL 2372841, at *14 (D. Colo. June 5, 2019) (applying *Ackermann* to a failure to warn claim arising under Colorado law).  And importantly, "even if the

physician is not aware of a risk, the plaintiff must show that a proper warning would have changed the decision of the treating physician, *i.e.*, that but for the inadequate warning, the treating physician would have not used or prescribed the product." *Id.* (internal quotation marks omitted).  To survive a motion for summary judgment in a medical failure to warn case, then, a plaintiff must demonstrate both the inadequacy of the warning given to the physician *and* that this inadequacy caused the physician to prescribe the device at issue.

Although there is a distinction between claims for negligence and strict liability based on failure to warn, the same evidence will frequently be used to establish both claims.  *Bond v. E.I. DuPont De Nemours & Co.*, 868 P.2d 1114, 1120 (Colo. App. 1993) (citation omitted).  Despite the theoretical differences between the two claims, "Colorado caselaw . . . suggests that there need not be a rigid distinction between negligence and strict liability failure to warn concepts." *Perlmutter v. U.S. Gypsum Co.*, 54 F.3d 659, 663 (10th Cir. 1995) (citation omitted).  "[T]he reasons which impose a duty to warn under [strict liability] also exist where the claim is based on negligence and, generally, the law applicable to warnings under [strict liability] are instructive in negligence cases as well." *Id.*

Ethicon argues that Plaintiffs' failure to warn claim fails for lack of proximate causation.  (ECF No. 71 at 4.)  Ethicon points out that Dr. Simon testified that before implanting the TVT in Ms. Curtin, he was aware of every risk of complication that Plaintiffs allege Ms. Curtin has experienced, and therefore, Plaintiffs cannot show that Ethicon's allegedly deficient warnings caused her injuries.  (*Id.* at 6–7.)  In addition, Ethicon argues that Plaintiffs' failure to warn claims fail because Dr. Simon did not rely

on the TVT IFU.  (*Id.* at 7.)  Finally, according to Ethicon, different warnings would not have changed Dr. Simon's prescribing decision.  (*Id.* at 8–9.)

The Court agrees.  In this case, any inadequate warning in the TVT IFU was not the proximate cause of Ms. Curtin's alleged injuries.  First, Dr. Simon testified that in 2006, when he implanted the mesh in Ms. Curtin, he was aware of the risks associated with mesh SUI surgery, including mesh exposure, vaginal pain, pain with intercourse, bleeding, infection, vaginal scarring, urinary problems, and recurrence of SUI.  (ECF No. 71 at 6; ECF No. 71-3 at 20–21.)  These are the injuries Ms. Curtin has allegedly suffered.  (ECF No. 71 at 2 ¶ 2; ECF No. 73 at 2 ¶ 3[2].)  In addition, Dr. Simon testified that knew these risks could be temporary or chronic, and that they could be mild, moderate, or severe.  (ECF No. 71-3 at 21.)

Further, Dr. Simon testified:

> Q. We'll call it the IFU or Information—Instructions For Use, I'm sorry. And on the bottom, I'll represent to you that this is dated 10 of 2004.
>
> A. I could have probably read it back then.
>
> . . .
>
> A. I—I—I could have probably read it back then.
>
> Q. Doctor, would the IFU, what—I'll refer to this document as the Instructions For Use or IFU.
>
> . . .
>
> Q. Would this have been something that you would have

---

[2] Ms. Curtin also allegedly experienced bowel obstruction, chronic constipation, chronic diarrhea, hernias, chronic bladder infections, and digestive problems with bowel control and constipation.  (ECF No. 73 at 2 ¶ 3.)  However, neither party addresses these physical ailments in the context of the failure to warn claim.  Thus, the Court limits its discussion to those risks the parties address.

reviewed prior to your implanting the TVT in Ms. Curtin in 2006?

A. Now, with each device?

Q. I'll start with is it something you would have reviewed at any point in time before implanting the device in Ms. Curtin?

A. Well, we'd be—this isn't something required that you look at.  But given that the person who wrote the device, of how to write it, no, I wouldn't have looked at the product review device that comes in the box with it.

. . .

Q. So it's not something you would have reviewed?

A. No.

Q. Okay. Not something you would have relied upon in your—

A. No.

Q. —informed consent process—

A. No.

Q. —with Ms. Curtin?

. . .

A. We were—I was teaching this for a couple years, so this is . . .

Q. Not something that you would have shared with Ms. Curtin?

. . .

A. No.

Q. Is it fair that your informed consent process with Ms. Curtin was informed by your experience, training, and your review of the medical literature?

A: Yes.

. . .

Q. If all of the potential risks that were listed under the "Mesh" column on Exhibit 5 that we looked at previously, if all of those potential risks were included in the IFU, would that have changed your decision to—

A. No.

Q. —to use the TVT device?

A. No.

Q. And is it fair that you didn't rely on the actual words of the IFU in recommending the TVT for Ms. Curtin?

A. True.

(ECF No. 71-3 at 21–22.)

Dr. Simon's testimony shows that he did not consult the IFU to obtain information about the risks of implanting the TVT device in Ms. Curtin.  Instead, the evidence shows that he relied on his experience, training, and his review of the medical literature.  He states that he did not rely on the IFU in his informed consent process with Ms. Curtin. Therefore, because Dr. Simon testified that he did not rely on the IFU, Plaintiffs' failure to warn claims fail as a matter of law.  *See Marie Renteria v. Ethicon, Inc.*, 2020 WL 7414744, at *7 (C.D. Cal. Nov. 18, 2020) (failure to warn and fraud-based claims fail where doctor testified she did not rely on manufacturer's product warnings); *Sharp v. Ethicon, Inc.*, 2020 WL 1434566, at *4 (W.D. Ark. Mar. 24, 2020) (doctor testified that he did not rely on the IFU in making the decision to prescribe TVT-O to plaintiff).

Plaintiffs argue that a genuine dispute of material fact nonetheless exists because Dr. Simon testified that he "probably did read the IFU around 2004," before he

began treating Ms. Curtin for urinary incontinence.  (ECF No. 73 at 9.)  But this contention fails given that Dr. Simon also testified that he did not rely on the IFU in the informed consent process, a critical fact which most certainly breaks the chain of proximate causation.

Further, Plaintiffs argue that Ethicon failed to warn Dr. Simon of the tendency of the TVT implant to shrink and degrade over time and that the mesh might have to be completely removed.  (*Id.*)  Plaintiffs also argue that Ethicon ignores Dr. Simon's testimony that he relied on the manufacturer's representatives to educate and inform him of new information regarding the TVT.[3]  (*Id.* at 10.)  They reason that even if Dr. Simon did not rely on the IFU, the Court should still find that Ethicon could have provided an adequate warning through their representatives on whom Dr. Simon relied.  (*Id.*)  Notably, however, Plaintiffs cite to no case law involving the breach of a duty to warn by medical device company agents where that company has also issued written warnings like the TVT IFU.

Plaintiffs in other pelvic mesh litigation have made arguments similar to Plaintiffs', but those arguments have been rejected.  In *Cutter v. Ethicon*, 2020 WL 109809, at * 8 (E.D. Ky. Jan. 9, 2020), the court considered a similar argument and concluded that "even assuming Ethicon agents' failure to warn implanting doctors could be the sole basis of [the failure to warn claim], the undisputed facts of this case indicate that such a failure would not satisfy the claim's proximate cause element."  There, the doctor testified that he knew the risks of the mesh surgery prior to implantation.  *Id.*  As the plaintiffs contended, the doctor agreed he would have considered and communicated

---

[3] Plaintiffs repeatedly refer to the device as "TVM" (*see, e.g.*, ECF No. 73 at 10), though the First Amended Short Form Complaint refers to the product as "TVT."

the device's contraindication for sexually active women had preceptors or Ethicon representatives provided such information.  *Id.*  But the doctor nevertheless insisted that his knowledge of Prolift implant risks in 2016, long after the plaintiff's complications arose, did not change his opinion that the Prolift device was safe and effective for the treatment of pelvic organ prolapse in women in 2006.  *Id.*  The doctor continued to believe that the benefits outweighed the risks and that the device had generally improved patients' quality of life.  Thus, the court found that the "clear indication is that further information regarding the Prolift's risks would not have affected his decision to use the Prolift device for [the] prolapse surgery," and found the failure to warn claim failed for lack of proximate cause.  *Id.*

*Cutter*'s reasoning applies here.  As in *Cutter*, Dr. Simon testified that he knew the risks of surgery prior to implantation.  Also like *Cutter*, Dr. Simon testified that he would have communicated the risk of degradation in the informed consent process, provided the degradation was actually causing problems in people who had mesh implants.  (ECF No. 71-3 at 38.)  But, also like *Cutter*, Dr. Simon nonetheless testified:

> Q. Putting yourself back at the time you implanted the TVT device in Ms. Curtin, but with the knowledge that you have sitting here today, do you agree that the TVT was a safe and effective treatment for her?
>
> . . .
>
> A. Yes.
>
> Q. And do you agree that at the time it had an accept— acceptable risk profile for the benefits you were hoping to achieve for her?
>
> A. Yes.

(ECF No. 71-3 at 41.)  This testimony indicates that further information regarding TVT's

risks, including degradation, would not have affected Dr. Simon's decision to use the TVT device for Ms. Curtin's SUI surgery.

Based on the foregoing, any inadequate warning from Ethicon to Dr. Simon regarding TVT's risks, including degradation, was not the proximate cause of the alleged injuries in this case.  Dr. Simon did not rely on the IFU in treating Ms. Curtin.  In sum, Plaintiffs have failed to establish that a genuine issue of material fact exists on the issue of whether Dr. Simon relied on Ethicon's IFU for the TVT device.

Accordingly, the Court will grant summary judgment in favor of Ethicon on Plaintiffs' claim for Strict Liability – Failure to Warn.  In addition, the Court will grant summary judgment in favor of Ethicon on the following claims, to the extent they are based on a theory of negligent failure to warn: Negligence (Count I), Negligent Infliction of Emotional Distress (Count X), and Gross Negligence (Count XIV).[4]

## D.   Violation of Consumer Protection Laws (Count XIII)

According to the Colorado Supreme Court,

> [t]o prove a private cause of action under the [Colorado Consumer Protection Act ("CCPA")], a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47

---

[4] The Court recognizes that Ethicon only moved for summary judgment on this issue as to Plaintiffs' claims for Strict Liability – Failure to Warn and Negligence (to the extent based on failure to warn).  (ECF No. 71 at 2.)  However, so that the ruling is logically consistent with the Court's ruling on the manufacturing defect claims, the Court will also dismiss the negligence-based claims to the extent they are based on negligent failure to warn.

(Colo. 2003) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

Ethicon argues that Plaintiffs' violation of consumer protection laws claim should be dismissed as duplicative of her failure to warn claim.  (ECF No. 27 at 5.)  In response, Plaintiffs argue that Ethicon has not cited any authority for the proposition that the consumer protection claims are not cognizable under Colorado law or precluded by the learned intermediary doctrine.  (ECF No. 30 at 15.)

Despite the underdeveloped briefing on this issue by both parties, the Court is persuaded that a claim for violation of consumer protection laws in this context is duplicative of a failure to warn claim.  Other courts addressing this issue have ruled similarly.  *See Carver*, 2020 WL 8258217, at *3 (granting motion for summary judgment on fraud-based claims, including consumer protection, because if the learned intermediary doctrine bars failure to warn claim, it also bars fraud-based claims as "repackaged failure to warn claims"); *see also Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 744–45 (S.D. W. Va. 2014) ("if the learned intermediary doctrine 'could be avoided by casting what is essentially a failure to warn claim under a different cause of action . . . then the doctrine would be rendered meaningless.'") (quoting *In re Nor-plant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997)); *see also id.* at 744 (collecting cases denying fraud-based claims under learned intermediary doctrine).  Accordingly, the Court will grant Ethicon's request for summary judgment on Plaintiffs' violation of consumer protection laws claim.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS that:

Ethicon's Motion for Partial Summary Judgment (ECF No. 26) is GRANTED as

follows:

1. Summary judgment is granted in favor of Ethicon on Plaintiffs' claims for:
   Negligence (to the extent based on manufacturing defect and failure to
   warn) (Count I); Strict Liability – Manufacturing Defect (Count II); Strict
   Liability – Failure to Warn (Count III); Common Law Fraud (Count VI);
   Fraudulent Concealment (Count VII); Constructive Fraud (Count VIII);
   Negligent Misrepresentation (Count IX); Negligent Infliction of Emotional
   Distress (to the extent based on manufacturing defect and failure to warn)
   (Count X); Breach of Express Warranty (Count XI); Breach of Implied
   Warranty (Count XII); Violation of Consumer Protection Laws (Count XIII);
   Gross Negligence (to the extent based on manufacturing defect and
   failure to warn) (Count XIV); and Unjust Enrichment (Count XV); and

2. To the extent summary judgment was not granted above, Plaintiffs' claims
   for Negligence (Count I); Strict Liability – Design Defect (Count V);
   Negligent Infliction of Emotional Distress (Count X); Gross Negligence
   (Count XIV); Loss of Consortium (Count XVI); Punitive Damages (Count
   XVII); Discovery Rule and Tolling (Count XVIII) REMAIN PENDING.[5]

---

[5] Despite being listed as "counts" on the First Amended Short Form Complaint (ECF No. 4), Plaintiffs' claims for Punitive Damages and Discovery Rule and Tolling are not independent claims. Punitive damages is an element of recovery, and discovery rule and tolling are doctrines affecting the limitations period.

Dated this 4th day of March, 2021.

BY THE COURT:

William J. Martinez
United States District Judge